**ALLSTAR MARKETING GROUP, LLC,** a New York limited liability company, and **Felknor Ventures, LLC,** a Tennessee limited liability company, Plaintiffs,

v.

**YOUR STORE ONLINE, LLC,** a Wisconsin limited liability company, **Chris Reoch,** an individual, and **Paul Reoch,** an individual, **TV Market, LLC,** a Wisconsin limited liability company, and **TV Marketplace, LLC,** a Wisconsin limited liability company, Defendants.

Case No. CV 09–02094 MMM (AGRx).

United States District Court, C.D. California.

Aug. 10, 2009.

Adam M. Cohen, Sarah Hawa Bawany Yousuf, Kane Kessler PC, New York, NY, Lynda J. Zadra–Symes, Nicholas David Atchison, Knobbe Martens Olson & Bear LLP, Irvine, CA, for Plaintiffs.

James C. Potepan, Thomas M. O'Leary, Ropers Majeski Kohn and Bentley, Los Angeles, CA, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER

MARGARET M. MORROW, District Judge.

On May 15, 2009, plaintiffs Allstar Marketing Group, LLC ("Allstar") and Felk-

nor Ventures, LLC ("Felknor") commenced this action against defendants Your Store Online, LLC ("YSO"), Chris Reoch, Paul Reoch, TV Market, LLC, and TV Marketplace, LLC, alleging, *inter alia,* violation of plaintiffs' trademarks with regard to three products: "Snuggie" brand fleece sleeved blankets, "Topsy Turvy" brand tomato planters, and "Aqua Globes" brand plant watering bulbs. On June 15, 2009, defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, for transfer to the Eastern District of Wisconsin.

## I. FACTUAL & PROCEDURAL BACKGROUND

Allstar is a New York limited liability company with its principal place of business in New York;[1] Felknor is a Tennessee limited liability company with its principal place of business in Tennessee.[2] Allstar is a producer and distributor of "unique household products," including the three products at issue in this case. It markets the products through direct response television advertising.[3] Allstar created the Snuggie and Aqua Globes products.[4] Felknor created the Topsy Turvy product and granted Allstar an exclusive license to market it in June 2008.[5]

The Snuggie is a fleece blanket with attached sleeves, which Allstar began marketing in August 2008.[6] The product has been featured in the New York Times, and on "Real Time with Bill Maher," "The Tonight Show with Jay Leno," and "The Oprah Winfrey Show."[7] Allstar alleges

---

1. First Amended Complaint ("FAC"), ¶ 3.

2. *Id.,* ¶ 4.

3. *Id.,* ¶ 14.

4. *Id.,* ¶¶ 16, 59.

5. *Id.,* ¶¶ 41, 44.

6. *Id.,* ¶ 16.

7. *Id.,* ¶¶ 20, 31–33.

that it owns common law trademark rights in the mark "Snuggie" for use in connection with sleeved blankets.[8] Its federal trademark applications for the mark are pending.[9]

The Aqua Globes are stained blown glass watering bulbs designed to water potted plants.[10] Allstar is the owner of a federal trademark registration for the mark "Aqua Globes" for use in connection with "plant watering globes of blown glass."[11] It also claims common law trademark rights in the "Aqua Globes" marks.[12]

Felknor is the owner of United States Patent No. 6,874,278, which covers a hanging planter designed to grow transplanted plants upside down, and a federal trademark registration for the mark "Topsy Turvy" for use in connection with planters.[13] It is also the owner of a copyright in a photograph of the Topsy Turvy product.[14]

Chris and Paul Reoch are the co-owners, managing members, and sole employees of YSO, a Wisconsin limited liability company with its principal place of business in Wisconsin.[15] YSO conducts business through its online store located at <youronlinestore.net>.[16] Plaintiffs assert that YSO "regularly advertises its products to and solicits business from California residents, and regularly ships products into [the Central District of California]."[17] They allege that defendants have infringed their trademark rights in the products at issue by marketing and selling sleeved fleece blankets under the names "Snuggie" or "Snuggle"; hanging planters identical in appearance to the Topsy Turvy under the name "Topsy Turny"; and watering bulbs under the name "Aqua Globes."[18] In addition plaintiffs allege that defendants have purchased the terms "Snuggie" and "Aqua Globes" as keywords for Internet advertising programs, including Google's "AdWords."[19] As a result, an advertisement with a link to defendants' website appears when customers run searches using those words.[20] Plaintiffs further allege that defendants have used the word "Snuggie" in the headers and text of their website to ensure that their site appears as a search result when search engine users search for "Snuggie."[21] They allege that defendants have used the copyrighted photograph of the Topsy Turvy in packaging and advertising for the Topsy Turny.[22] Finally, plaintiffs alleges that defendants have marketed their products with the "As Seen on TV" label, despite the fact that defendants have never paid for television advertising.[23]

8. *Id.,* ¶ 17.

9. *Id.,* ¶ 18.

10. *Id.,* ¶ 59.

11. *Id.,* ¶ 62.

12. *Id.,* ¶ 61.

13. *Id.,* ¶¶ 41, 42. The patent is not at issue in this case.

14. *Id.,* ¶ 43.

15. *Id.,* ¶¶ 5–7; Declaration of Chris Reoch ("C. Reoch Decl."), ¶¶ 2–3; Declaration of Paul Reoch ("P. Reoch Decl."), ¶¶ 2–3. According to the Reoches' declarations, TV Market, LLC, and TV Marketplace, LLC are no longer active companies. (C. Reoch Decl., ¶ 2; P Reoch Decl., ¶ 2.)

16. FAC, ¶ 5.

17. *Id.*

18. *Id.,* ¶¶ 22, 49, 65.

19. *Id.,* ¶¶ 25, 68.

20. *Id.,* ¶¶ 26, 69.

21. *Id.,* ¶¶ 27, 34.

22. *Id.,* ¶ 56.

23. *Id.*

With regard to all three products, plaintiffs assert a variety of Lanham Act claims; unfair competition and false advertising claims under California Business and Professions Code §§ 1200 and 17500; and common law unfair competition and trademark infringement claims. In addition, they assert a copyright infringement claim based on defendants' use of the Topsy Turvy photograph.

On June 15, 2009, Chris and Paul Reoch filed the present motion. The Reoches argue that they are not subject to personal jurisdiction in this district in their individual capacities and that venue is improper. They do not, however, argue that the court lacks jurisdiction over the corporate defendants. Alternatively, the Reoches argue that, even if the court can exercise personal jurisdiction over them and venue is proper, the court should transfer the case to the Eastern District of Wisconsin under 28 U. S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice.[24]

## II. THE MOTION TO DISMISS

### A. Standard Governing Motions To

### Dismiss for Lack of Personal Jurisdiction

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006); *Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F.Supp.2d 957, 961 (C.D.Cal.2005) (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995)). Absent formal discovery or an evidentiary hearing, plaintiff need make only a prima facie showing that jurisdiction exists to survive a Rule 12(b)(2) motion to dismiss.[25] *Pebble Beach*, 453 F.3d at 1154; *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Ziegler*, 64 F.3d at 473.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154–55 (citing *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996));

**24.** Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or in the Alternative to Transfer for Improper Venue ("Mot.") at 1.

**25.** To make this showing, plaintiffs may rely on allegations in their pleadings to the extent they are not controverted by the moving party. See, e.g., *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.2001) ("Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss"). If defendants adduce evidence controverting the allegations, however, plaintiffs may not rely on their pleadings but must " 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.' " *Scott v. Breeland*, 792 F.2d 925,

927 (9th Cir.1986) (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004); see also *Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists,' " quoting *WNS Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989)).

see also *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 243 F.Supp.2d 1073, 1082 (C.D.Cal.2003) (citing *Aanestad v. Beech Aircraft Corp.,* 521 F.2d 1298, 1300 (9th Cir.1974)). Because California authorizes jurisdiction to the full extent permitted by the Constitution, see CAL.CODE CIV. PROC. § 410. 10, the only question the court must ask in this case is whether the exercise of jurisdiction over defendants would be consistent with due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir.2003); *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1317 n. 2 (9th Cir.1998).

■■■ The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two recognized bases for exercising personal jurisdiction over a non-resident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters;[26] and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. See *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050–51 (9th

Cir.1997). Plaintiffs assert conclusorily that defendants are subject to general jurisdiction.[27] The analysis in their opposition to defendants' motion addresses specific jurisdiction only, however. Therefore, the court considers only whether specific jurisdiction exists.

■■■ The Ninth Circuit applies a three-prong test to determine whether a court may exercise specific jurisdiction over a defendant:

" '(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.' "

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004) (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)). The plaintiffs bear the burden of satisfying the first two prongs of this test. *Id.* If they do, "the burden then shifts to the defendant[s] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Here, plaintiffs premise personal jurisdiction primarily on an allegation that de-

---

**26.** Properly invoked, general jurisdiction allows a federal court to hear *any* cause of action against the defendant, even one unrelated to his activities in the forum state. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

**27.** Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative to Transfer for Improper Venue ("Opp.") at 9 n. 1.

fendants have sold the infringing products in this state. In addition, plaintiff have adduced evidence that defendants ship products from a customer service center located in Carson, California.[28] Defendants concede that they maintain a warehouse in Long Beach, California.[29] Perhaps for this reason, the Reoches do not challenge the court's jurisdiction over the corporate defendants. They argue, however, that they have no contacts with California in their individual capacities.[30] They assert that their only contacts with California are in their capacity as officers of YSO.[31] Plaintiffs counter that the Reoches are subject to personal jurisdiction because they are the "moving force" behind the infringing sales.[32]

### B. Whether Plaintiffs Have Established Purposeful Availment

"Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. National Enquirer,* 854 F.2d 1191, 1195 (9th Cir.1988). To show purposeful availment, a plaintiff must show that the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.,* 913 F.2d 758, 760 (9th Cir.1990) (citing *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir. 1990), overruled on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)); see also *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person . . .' "). A defendant's contacts must be such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The complaint alleges that the Reoches have personally participated in and encouraged the infringing sales on which plaintiffs rely to establish personal jurisdiction.[33] Both of the Reoches state in their declarations that they are the "managing members" of YSO and its only two employees.[34] They do not offer any evidence rebutting plaintiffs' allegations that they participated in and encouraged the infringing sales. The court therefore accepts plaintiffs' allegations as true for purposes of this motion. See *Doe,* 248 F.3d at 922. The Reoches argue, however, that their activities on behalf of YSO are not personal contacts with California establishing that the exercise of personal jurisdiction over them is appropriate. Although the Reoches do not use the term, they appear to rely on the fiduciary shield doctrine.

### 1. Whether the Fiduciary Shield Doctrine Insulates the Reoches from Personal Jurisdiction

"The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on the basis of their employers' minimum contacts within a given jurisdiction. In other words, '[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors,

---

**28.** Declaration of Frank Mendez, ¶ 5.

**29.** C. Reoch Decl., ¶ 6; P Reoch Decl., ¶ 6.

**30.** Mot. at 7–9.

**31.** *Id.*

**32.** Opp. at 10–13.

**33.** FAC, ¶¶ 40, 58, 73.

**34.** C. Reoch Decl., ¶¶ 2–3; P Reoch Decl., ¶¶ 2–3.

agents, and employees are suable locally as well.' " *Winery v. Graham*, No. C 06–3618 MHP, 2007 WL 963252, *5 (N.D.Cal. Mar.2007) (quoting *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F.Supp.2d 1104, 1111 (C.D.Cal.1999)); see also *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.1989) ("Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person," citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir.1974), and *United States v. Montreal Trust Co.*, 358 F.2d 239 (2d Cir.1966)). The mere fact that defendants took actions constituting sufficient contacts with the state on behalf of a corporate employer, however, will not shield the individuals from being subjected to jurisdiction. See *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity").

 Courts typically consider a corporate officer's contacts on behalf of a corporation as his or her personal contacts for purposes of personal jurisdiction when the contacts support "some identifiable theory of liability pursuant to which [the officer's] contacts on behalf of the corporate employer may justifiably be imputed to the employee." *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08–04078 CW, 2009 WL 1033818, *3 (N.D.Cal. Apr. 16, 2009) (citing *Click v. Dorman Long*

*Technology, Ltd.*, No. C 06–1936 PJH, 2006 WL 2644889, *4 (N.D.Cal. Sept. 14, 2006)).

The Ninth Circuit has noted with approval language in a First Circuit opinion that "cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct … or the 'central figure' in the challenged corporate activity.' " *Davis*, 885 F.2d at 524 (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir.1980)). Courts have thus found a corporate officer's contacts on behalf of a corporation sufficient to subject the officer to personal jurisdiction where the officer "is a 'primary participant' in the alleged wrongdoing" or "had 'control of, and direct participation in the alleged activities.' " *Matsunoki Group, Inc.*, 2009 WL 1033818 at *3–4 (citing *Wolf Designs, Inc. v. DHR Co.*, 322 F.Supp.2d 1065, 1072 (C.D.Cal.2004), in turn citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir.1985)); see also *Wyatt Technology Corp. v. Smithson*, No. CV 05–1309 WMB (RZx), 2005 WL 6132329, *6 (C.D.Cal. Aug. 30, 2005) ("[I]f the agent is … 'actively and personally involved in the conduct giving rise to the claim,' he may be subject to jurisdiction in the plaintiff[']s forum state," quoting *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 698 (6th Cir.2000) (holding that the court could exercise jurisdiction "over corporate officers who actively and personally involved themselves in conduct violating the Lanham Act, notwithstanding the fact that the defendants acted as agents when they did so")); accord *Balance Dynamics Corp.*, 204 F.3d at 697–98 ("[O]ther courts have found that the exercise of jurisdiction over the agent depends on the extent of that agent's personal involvement in the conduct. These courts exercised personal jurisdiction over

corporate officers where the officers were active participants in the tortious conduct. There is support for this approach in Sixth Circuit case law.... [W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment"); *In re Application to Enforce Administrative Subpoenas Duces Tecum of the Securities and Exchange Commission,* 87 F.3d 413, 418 (10th Cir.1996) ("[E]mployees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation").

■ As noted, the court accepts for purposes of analyzing jurisdiction the uncontroverted allegation that the Reoches personally participated and encouraged the sales of allegedly infringing products to this district. This is sufficient to establish that they were the moving force behind the infringing activity. See *Matsunoki Group, Inc.,* 2009 WL 1033818 at *3–4 ("A plaintiff may show that a corporate employee is the moving, active, conscious force behind the infringing activity by demonstrating that the corporate officer directs, controls, ratifies, or participates in the infringing activity, or acts as the 'guiding spirit and the active directing hand in full charge of [the corporation's] operations,'" citing *International Mfg. Co. v. Landon, Inc.,* 336 F.2d 723, 728 (9th Cir. 1964)); see also *Silverlit Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.,* Case No. C 06–7966, 2007 WL 521239, *9 (N.D.Cal. Feb. 15, 2007) (finding it appropriate to exercise personal jurisdiction over a corporate officer who was "the owner of the HobbyTron.com website, through

which the allegedly infringing products were sold"). Accordingly, the court will consider the Reoches' involvement in the infringing sales for purposes of analyzing their contacts with the forum. Because these transactions occurred via defendants' website, the court examines the considerations that govern personal jurisdiction based on internet activity.

## 2. Whether the Reoches' Sales of Allegedly Infringing Products Via Their Company's Website Constitute Purposeful Availment

■ "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is." *Jeske v. Fenmore,* No. SACV 08–01015 DOC (MLGx), 2008 WL 5101808, *4 (C.D.Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing,* 539 F.3d 1011, 1018 (9th Cir.2008)); see also *American Auto. Ass'n, Inc. v. Darba Enterprises Inc.,* No. C 09–00510 SI, 2009 WL 1066506, *4 (N.D.Cal. Apr. 21, 2009) ("[I]n the context of the internet, courts use a sliding scale approach to assess purposeful availment"). The court in *American Auto Association* summarized this "sliding scale" approach:

> "At one end of the scale are 'passive' websites which merely display information, such as an advertisement. See [*Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999)]. Personal jurisdiction is 'not appropriate when a website is merely ... passive.' *Id.* At the other end of the scale are 'interactive' websites which function for commercial purposes and where users exchange information. See *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119,

1124 (W.D.Pa.1997)). Personal jurisdiction is appropriate 'when an entity is conducting business over the internet.' *Stomp, Inc.,* 61 F.Supp.2d at 1078. Where a website is somewhere between the two extremes, 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.' *Cybersell,* 130 F.3d at 419 (quoting *Zippo Mfg.,* 952 F.Supp. at 1124)." *American Auto. Ass'n, Inc.,* 2009 WL 1066506 at *4.

Plaintiffs allege that, through their website, defendants solicit business from California customers and regularly sell infringing products to customers in the state.[35] As the Reoches once again offer no conflicting evidence, the court accepts this allegation as true for purposes of analyzing personal jurisdiction. Based on the allegation, the court concludes that by operating a highly commercial website through which regular sales of allegedly infringing products are made to customers in this state, the Reoches have purposefully availed themselves of the benefits of doing business in this district, such that they should reasonably anticipate being haled into court here. *Washington v. www.dirtcheapcig.com, Inc.,* 260 F.Supp.2d 1048, 1052 (W.D.Wash.2003) (concluding that "Dirtcheap's sale of cigarettes to Washington residents through its interactive website constitutes purposeful availment of the privilege of conducting business in Washington," and observing that "it is well settled that a non-resident's maintenance of an interactive website through which consumers may purchase goods or services is sufficient to meet this element"); see, e.g., *Silverlit Toys,* 2007 WL 521239 at *8 ("Defendants concede that Absolute Toy Marketing's sale of the

allegedly infringing products in California [via its website] subjects it to specific jurisdiction in the State"); *Stomp, Inc.,* 61 F.Supp.2d at 1078 ("In the instant case, the nature of NeatO's website is highly commercial. Although NeatO's website provides information about the company, customer service, and technical support, a substantial portion of the site is dedicated to allowing the consumer to purchase NeatO's products on-line. NeatO's on-line sales constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo,* 952 F.Supp. at 1124, asserting personal jurisdiction comports with due process"); see also, e.g., *Carrot Bunch Co. v. Computer Friends,* 218 F.Supp.2d 820, 826 (N.D.Tex.2002) (finding purposeful availment where defendant operated "interactive Internet website that [was] used to sell printer inkjet products to Texas residents"); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.,* 106 F.Supp.2d 895, 903 (N.D.Tex.2000) ("PI opted to transact business with Texas residents. It cannot now maintain that it did not foresee the consequences of interactively selling its products in this state"); cf. *American Auto. Ass'n,* 2009 WL 1066506 at *4 (finding purposeful availment where defendant "profited when California users entered their contact information in his website, even though he did not sell anything to them directly"). Furthermore, defendants maintain a warehouse in California that stores the products at issue, and ships them to customers from a customer service center located in the state. The Reoches state in their declarations that they visit California once a year in relation to YSO's business.[36] These more traditional contacts support the court's conclusion that the Reoches have purposefully availed themselves of the benefits of doing business in this dis-

---

**35.** FAC, ¶ 5.

**36.** C. Reoch Decl., ¶ 6; P Reoch Decl., ¶ 6.

trict. See *Broadcast Marketing Intern., Ltd. v. Prosource Sales & Marketing,* 345 F.Supp.2d 1053, 1062 (D.Conn.2004) ("PSMI admits that it has sold $518.27 worth of products to Connecticut customers through this website. While this number may represent a small percentage of PSMI's business, the maintenance of an interactive website, combined with PSMI's more traditional contacts with Connecticut, compel[s] a finding that the exercise of personal jurisdiction is proper").

## C. Whether the Claims Arise Out of the Reoches' Contacts

■ A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum. See *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 385 (9th Cir.1990), rev'd on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). The Ninth Circuit has adopted a "but for" test when assessing whether an action arises out of a defendant's contacts with the forum state. See, e.g., *Panavision, Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998) ("We must determine if the plaintiff Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward Panavision in California"); *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1051–52 (9th Cir. 1997) ("[I]t cannot be said that Appellant would not have sustained her injury, 'but for' [defendant's] alleged misconduct").

■ The Reoches' contacts with the forum are their sales of allegedly infringing products to customers in this state; but for the Reoches' sales, plaintiffs would not have been injured. Accordingly, the second requirement for specific jurisdiction is satisfied. See *Salu, Inc. v. Original Skin Store,* No. CIV. S–08–1035 FCD/ KJM, 2008 WL 3863434, *6 (E.D.Cal. Aug. 13, 2008) ("Defendant's contacts in Califor-

nia—namely its interactive website and direct sales to California consumers—resulted in the alleged violation of plaintiff's trademark at issue in this litigation. Therefore, the current action arises out of defendant's contacts with California" (citation˙omitted)); see also, e.g., *MCA Records, Inc. v. Charly Records Ltd.,* No. 95–56250, 1997 WL 76173, *5 (9th Cir. Feb. 21, 1997) (Unpub. Disp.) ("But for Records advertisement and sale of Chess recordings, MCA's rights in those recordings and related trademarks would not have been infringed. Because some of the advertisement and sales activity was directed to California, MCA's claims arise out of this forum-related activity," citing *Vencedor Mfg. Co. v. Gougler Industries, Inc.,* 557 F.2d 886, 892 (1st Cir.1977) (holding that the fact that defendant's sales in forum were less than .5 percent of its total sales volume was irrelevant, so long as its sales were part of a "regular course of dealing, and [were] not isolated or exceptional events")).

## D. Whether Exercising Jurisdiction Is Reasonable

■ The final prong of the jurisdictional test examines whether it is reasonable to subject defendants to suit in the forum state. Reasonableness is assessed by weighing the following factors: (1) the extent of defendant's purposeful injection into the forum; (2) defendant's burden in litigating in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ziegler,* 64 F.3d at 474; see also *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559. As noted, the burden is on defendant to establish unreasonable-

ness. See, e.g., *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (noting that, once the other prongs of the personal jurisdiction test are established, defendant may defeat jurisdiction only by " 'present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable,' " quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

 "Even if there is sufficient 'interjection' into [California] to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Ziegler*, 64 F.3d at 475 (quoting *Core–Vent Corp.*, 11 F.3d at 1488 (brackets original) (quoting *Insurance Company of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir.1981)); see also *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114–15 (9th Cir.2002) ("There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction . . ."); but see *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir.1991) ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant. As we have concluded, albeit narrowly, that appellees purposefully availed themselves of the privilege of conducting activities in California, there is no need to analyze this first factor separately").

Here, the Reoches sell a substantial amount of allegedly infringing products to California customers. The degree of interjection therefore favors a finding of reasonableness. See *Lamm ex rel. Doherty v. Bumbo, Bumbo Ltd.*, Nos. C 07–04807 MHP, C 07–05597 MHP, 2008 WL 2095770, *10 (N.D.Cal. May 14, 2008) (the

degree of interjection favored reasonableness where "[i]t [was] likely that a significant number of units were sold in California"); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F.Supp.2d 1077, 1081 (C.D.Cal.2002) (the degree of interjection favored a finding of reasonableness where the "Worleys sold and shipped goods into California over 2500 times").

 The second factor—the burden on defendant in litigating in the state—must be examined "in light of the corresponding burden on the plaintiff." *Sinatra*, 854 F.2d at 1199. Plaintiffs argue that litigation in Wisconsin will be as burdensome for them as litigation in California will be for the Reoches. They assert that they chose California as a forum because Allstar maintains a warehouse here and 19% of its total sales are to California customers.[37] Both plaintiffs, however, are citizens of East Coast states. As plaintiffs have chosen to litigate far from their home states, it appears that litigating in defendants' home state would present little additional burden for them. The financial burden of litigating in a distant forum is unlikely to be substantial for any of the parties, however, considering the availability of e-filing and telephonic appearances. See *Panavision*, 141 F.3d at 1323 ("The burden on [defendant] as an individual living in Illinois to litigate in California is significant, but the inconvenience is not so great as to deprive him of due process. As the district court stated, 'in this era of fax machines and discount air travel' requiring [defendant] to litigate in California is not constitutionally unreasonable' "). The court therefore finds that this factor favors transfer only slightly.

 Turning to the remaining factors, the third factor involves evaluating the extent of any conflict with the sovereignty of defendants' home state. "Litigation

**37.** Declaration of Howard Boilen, ¶¶ 2, 5, 7.

against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra,* 854 F.2d at 1199; accord *Harris Rutsky & Co.,* 328 F.3d at 1133. Defendants are citizens of Wisconsin rather than of a foreign nation. "Any conflicting sovereignty interests[, moreover, can be] accommodated through choice-of-law rules." *Nissan Motor Co. Ltd. v. Nissan Computer Corp.,* 89 F.Supp.2d 1154, 1161 (C.D.Cal.2000) (citing *Gray & Co. v. Firstenberg Machinery Co., Inc.,* 913 F.2d 758, 761 (9th Cir.1990)). As a consequence, this factor is of little importance in the court's assessment of reasonableness.

■ The fourth factor is California's interest in adjudicating the controversy. Although none of the parties is a California citizen, the allegedly infringing products were sold to California citizens. This factor thus favors a finding that the exercise of jurisdiction is reasonable, as "California has a strong interest in protecting its citizens from trademark infringement and consumer confusion." *Nissan Motor Co.,* 89 F.Supp.2d at 1161.

■ The fifth factor—efficient judicial resolution—focuses on the location of the evidence and witnesses. *Panavision,* 141 F.3d at 1323. This factor "is no longer weighed heavily," however, "given the modern advances in communication and transportation." *Id.* (citing *Caruth v. International Psychoanalytical Ass'n,* 59

F.3d 126, 129 (9th Cir.1995)). While defendants contend that their witnesses and evidence are located primarily in Wisconsin,[38] plaintiffs contend that their witnesses and evidence are located primarily in California.[39] Consequently, this factor is neutral in assessing whether exercising jurisdiction over defendants is reasonable.

The sixth factor is the importance of the forum to plaintiff's interest in convenient and effective relief. Plaintiffs contends that their witnesses and evidence are located primarily in this state, and thus that this is the forum that will afford convenient relief.[40] Although "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff," *Ziegler,* 64 F.3d at 476 (quoting *Core–Vent Corp.,* 11 F.3d at 1490), this factor tips slightly in favor of plaintiffs. By contrast, the last reasonableness factor—the availability of an alternative forum—favors the Reoches, as plaintiffs have not demonstrated that Wisconsin is not a viable and available venue for litigating this suit. See *id.* ("The plaintiff bears the burden of proving the unavailability of an alternative forum," quoting *Core–Vent Corp.,* 11 F.3d at 1490).

As can be seen, three factors favor plaintiffs, two are neutral, and two favor defendants. Given the state of the record, it cannot be said that the Reoches have adduced sufficient evidence to establish that exercising jurisdiction over them is unreasonable.[41] See, e.g., *Ting v. Orbit Communication Co.,* 105 F.3d 666, 1997

**38.** C. Reoch Decl., ¶¶ 3, 8.

**39.** Opp. at 20.

**40.** *Id.*

**41.** At the hearing, the Reoches' counsel argued that exercising personal jurisdiction over the men would be unreasonable because, as individuals residing in Wisconsin, the Reoches did not expect to be sued in California in their individual capacities. Counsel conceded that exercising personal jurisdiction over YSO was reasonable, however. The fact that the Reoches wrongly assumed that their status as officers of YSO would insulate or shield them from personal jurisdiction in their individual capacities does not make the court's exercise of jurisdiction over them unreasonable. Given their personal contacts with the state, exercising personal jurisdiction over the Reoches with respect to claims arising out of those contacts *is* reasonable.

WL 8470, *5 (9th Cir. Jan. 7, 1997) (Unpub. Disp.) (concluding, in a case where three factors favored plaintiff, two favored defendant and two were neutral, that defendant had not "presented a compelling case that the exercise of jurisdiction would be unreasonable"). Although the Reoches argue that litigating in California will inconvenience them, this is not sufficient, given the balance of the remaining factors, to establish that exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. See *Panavision,* 141 F.3d at 1323 ("[U]nless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction,'" quoting *Caruth,* 59 F.3d at 128–29); see also *Shute,* 897 F.2d at 387 ("This circuit recognizes that once minimum contacts have been established, inconvenience to the defendant is more appropriately handled not as a challenge to jurisdiction, but as a factor supporting a change in venue," citing *Sinatra,* 854 F.2d at 1199 and *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1481 (9th Cir.1986)).

In sum, considering each of the three relevant factors, the court concludes that it is appropriate to exercise personal jurisdiction over defendants Chris and Paul Reoch in this case.

### E. The Motion to Dismiss for Improper Venue

#### 1. Legal Standard Governing Motions to Dismiss under Rule 12(b)(3)

A party wishing to challenge venue may bring a motion under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406, which provides that a district court shall dismiss or transfer a case if venue is improper. Venue in federal courts is governed entirely by statute. See *Leroy v. Great Western United Corp.,* 443 U.S. 173, 181, 99 S.Ct. 2710, 61

L.Ed.2d 464 (1979). If the court finds that the case has been filed "in the wrong division or district," it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The plaintiff has the burden of showing that venue is proper in this district. See *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir.1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California"); see also *Hope v. Otis Elevator Co.,* 389 F.Supp.2d 1235, 1243 (E.D.Cal.2005) ("Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated," citing *Airola v. King,* 505 F.Supp. 30, 31 (D.Ariz.1980)). "When there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim." *Kelly v. Echols,* No. Civ. F05118 AWI SMS, 2005 WL 2105309, *11 (E.D.Cal. Aug. 30, 2005). In ruling on a motion to dismiss for improper venue, "the allegations in the complaint need not be accepted as true, and the court may consider evidence outside the pleadings." *eBay Inc. v. Digital Point Solutions, Inc.,* 608 F.Supp.2d 1156, 1161 (N.D.Cal.2009); see also *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996). "[T]he trial court must draw all reasonable inferences in favor of the non-moving party[,] [however,] and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider National, Inc.,* 362 F.3d 1133, 1138 (9th Cir.2004).

#### 2. Whether Venue Is Proper in the Central District of California

#### a. Whether Venue Is Proper Under 28 U.S.C. § 1400(a)

Plaintiffs first argue that venue is proper under 28 U.S.C. § 1400(a), which

governs venue in copyright actions.[42] That section provides:

"Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found."

The Ninth Circuit has interpreted this statute to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir.), rev'd on other grounds sub nom. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). As the court has concluded that defendants are subject to personal jurisdiction in this district, venue lies here as to plaintiffs' copyright claim. Plaintiffs' case, however, is primarily an action for trademark infringement. Of the nine claims asserted in the complaint, all but one are Lanham Act claims or state claims analogous to Lanham Act claims. Plaintiffs' copyright claim relates to a photograph of one of the products at issue; the claim is unrelated to the other two products at issue. Allstar, the primary plaintiff in the case, is not the owner of the copyrighted photograph of the Topsy Turvy. Plaintiffs' claim that defendants infringed the copyright in this photograph is clearly tangential to the central issues in this case, which relate to trademark infringement and unfair competition. The fact that venue is proper for the copyright claim, therefore, does not establish that venue is proper for the federal trademark and related state law claims. See *United Truck & Equipment, Inc. v. Curry Supply Co.*, No. CV08–01046–PHX–GMS, 2008 WL 4811368, *11 (D.Ariz. Nov. 5, 2008) ("Despite venue be-

ing proper for United's federal copyright claim, there must be an independent basis for venue with respect to United's federal trademark claims and derivative state claims").

 Although plaintiffs do not explain why the copyright venue statute makes bringing suit in this district appropriate for all their claims, it is possible that they rely on a "pendent venue" theory. "On occasion, where venue exists for the principal cause of action, courts have agreed to adjudicate closely related claims even if they lacked an independent source of venue." *Id.* at *11 n. 4 (quoting *Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1431 (D.C.Cir.1984)). Plaintiffs' copyright infringement claim concerning a photograph of the Topsy Turvy is not closely related to its trademark claims related to that product, see *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828, 843 (C.D.Cal.2006), rev'd in part on other grounds, 508 F.3d 1146 (9th Cir.2007) ("Trademark infringement typically concerns issues not applicable to copyright infringement"), and not at all related to its trademark claims concerning the Snuggie and Aqua Globes. Accordingly, it would not be appropriate to find that there is venue over the trademark claims under a "pendent venue" theory. See *Shari's Berries Intern., Inc. v. Mansonhing*, No. 06–0768, 2006 WL 2382263, *3 (E.D.Cal. Aug. 17, 2006) (declining to extend venue to federal and state trademark claims on the basis that venue on copyright claims was proper under the copyright venue statute, as the claims were "not so closely related that they justify adoption of a pendent venue theory"); see also *United Truck & Equipment, Inc.*, 2008 WL 4811368 at *11 n. 4 ("The Court is unaware of even one federal case where a court which has an independent basis for federal copyright

---

**42.** *Id.* at 16.

claims used the 'pendent venue' doctrine to retain federal or state trademark claims that did not have an independent basis for venue. This Court likewise declines to apply 'pendent venue' to United's non-copyright claims").

### b. Whether Venue over the Trademark Claims Is Proper under 28 U.S.C. § 1391(b)

 Venue over trademark claims is governed by the general venue statute, 28 U.S.C. § 1391. See *Golden Scorpio Corp. v. Steel Horse Bar & Grill,* 596 F.Supp.2d 1282, 1286 n. 3 (D.Ariz., 2009) ("Because the Lanham Act has no special venue provision, the general venue statute applies"). That statute provides in relevant part:

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced...."

Plaintiffs argue that venue is appropriate in this district because a substantial part of the sales giving rise to the claim occurred here. "In a trademark suit brought under the Lanham Act, a 'sub-stantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, 'whether that occurs solely in one district or in many.'" *Golden Scorpio,* 596 F.Supp.2d at 1286 (quoting *Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994), and citing *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) ("The place where the alleged passing off occurred ... provides an obvious correct venue"), and *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956) ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's")); see *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.,* No. C 05–0587 MHP, 2005 WL 701599, *4 (N.D.Cal. Mar. 23, 2005) ("[T]he fact that a substantial number of consumers of plaintiff's wine who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark is sufficient to establish th[at] this jurisdiction is a proper venue for the adjudication of plaintiff's claim"); *Sykes Lab., Inc. v. Kalvin,* 610 F.Supp. 849, 860 n. 8 (C.D.Cal.1985) (observing that trademark infringement occurs in the district "where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's" (citation omitted)); see also *R. Griggs Group Ltd. v. Consolidated Shoe, Inc.,* No. C98–4676 FMS, 1999 WL 226211, *4 (N.D.Cal. Apr. 9, 1999) ("Because there is evidence that both Griggs' shoes and defendants' shoes are sold in this district, this is one of the districts in which confusion is likely to occur").

 Although the court accepted plaintiffs' allegations regarding defendants'

sales in this district as true in assessing personal jurisdiction, under Ninth Circuit precedent, it need not accept the allegations as true for purposes of defendants' venue challenge. Plaintiffs have adduced evidence that 19% of defendants' sales of the products at issue occur in California.[43] Evidence of sales of defendants' products in this district, however, is at best minimal.[44] The only evidence plaintiffs proffer that potentially shows sales to customers in this district is an internet printout of customer comments and complaints related to YSO.[45] Customers from Laguna Hills, Santa Fe Springs, and San Luis Obispo posted comments; the customers' comments do not indicate, however, whether the products they purchased were the products at issue in this case.[46] Even drawing all inferences in plaintiffs' favor, the court cannot conclude, based on this evidence, that a substantial amount of infringing sales occurred in this district. Despite this fact, defendants, who are in the best position to adduce evidence regarding their sales in the district, have come forward with no evidence controverting plaintiffs' allegations regarding their sales. Courts in other districts have held that plaintiffs may rely on the allegations in their complaint to establish venue to the extent those allegations are not controverted by defendant's evidence. See *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir.1998) ("Plaintiff contends that in responding to a motion to dismiss for improper venue, he was entitled to rely upon the well pled facts of his complaint. This is true, however, only to

the extent that such facts are uncontroverted by defendant's affidavit"); *Home Ins. Co. v. Thomas Industries, Inc.*, 896 F.2d 1352, 1355 (11th Cir.1990) ("When a complaint is dismissed on the basis of improper venue without an evidentiary hearing, the plaintiff must present only a prima facie showing of venue. Further, [t]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits" (citations and internal quotation marks omitted)); *Nagel v. ADM Investor Services, Inc.*, 995 F.Supp. 837, 843 (N.D.Ill.1998) ("On a motion to dismiss for improper venue under Rule 12(b)(3), a court takes all allegations in the complaint as true, unless contradicted by the defendant's affidavits") see also Charles Alan Wright & Arthur R. Miller, 5B FEDERAL PRACTICE & PROCEDURE § 1352 ("All well-pleaded allegations in the complaint bearing on the venue question are generally taken as true, unless contradicted by the defendant's affidavits").

 Although the court has not found a case in this circuit adopting this precise principle regarding venue, the Ninth Circuit's statements that a district court "need not" accept factual allegations and "may" consider evidence outside the pleadings suggests that it adopts a similar approach with regard to uncontroverted allegations.[47] The court believes such an approach is appropriate under the circumstances, considering defendants' superior access to proof regarding their sales in this district. For purposes of analyzing venue, therefore, the court accepts as true

---

43. Boilen Decl., ¶ 5.

44. The court does not consider orders placed by plaintiffs' employees or the private investigator hired by plaintiffs, as these individuals were not confused by defendants' products.

45. Yousuf Decl., Exh. 3.

46. *Id.*

47. With regard to personal jurisdiction, the Ninth Circuit has instructed that allegations in the complaint are to be taken as true unless controverted. See *Doe*, 248 F.3d at 922. Given the close relationship between personal jurisdiction and venue, it makes sense to apply a similar approach under Rules 12(b)(2) and (b)(3).

the fact that defendants have made sales in this district.[48] As courts have found that only a "modest" amount of sales of infringing product is sufficient to support venue in a particular district, the court concludes that plaintiffs' trademark claims are properly brought in this district under § 1391(b)(1). See *Sutter Home Winery*, 2005 WL 701599 at *4 n. 2 (finding venue appropriate despite the fact that defendant's "sales in this district appear to be relatively modest" given the "possibility that some potential purchasers of plaintiff's wine who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark").

## III. THE MOTION TO TRANSFER VENUE

### A. Legal Standard Governing Motions to Transfer Venue Under 28 U.S.C. § 1404

■ "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision gives a district court broad discretion to transfer a case to another district where venue is also proper.[49] See, e.g., *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir.1979) ("Weighing of factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge"); *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D.Cal.1994) (noting that whether to transfer venue is within "the inherently broad discretion of the Court"); see also 15 Charles A. Wright, Arthur R. Miller, &

Edward H. Cooper, Federal Practice and Procedure § 3847 (2007). The district court must " 'adjudicate motions for transfer [of venue] according to an 'individualized, case-by-case consideration of convenience and fairness.' ' " *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

■ In deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations. Wright et al., *supra*, §§ 3841–55; see also *Jones*, 211 F.3d at 498–99 (suggesting that the following factors may be relevant in assessing a motion to transfer venue: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof"); *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1088 (N.D.Cal.2002) ("In considering motions to transfer venue under this section, courts look to: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice," citing *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir.1969)).

---

**48.** At the hearing, the Reoches' counsel represented that 19% of defendants' sales occur in California.

**49.** Because defendants reside in the Eastern District of Wisconsin, venue would be proper in that district. See 28 U.S.C. § 1391(b)(1).

The burden is on the moving party to establish that a transfer will allow a case to proceed more conveniently and better serve the interests of justice. See, e.g., *Commodity Futures Trading Comm.*, 611 F.2d at 279; *STX, Inc. v. Trik Stik, Inc.*, 708 F.Supp. 1551, 1555–56 (N.D.Cal. 1988) ("In seeking to transfer a case to a different district, a defendant bears a heavy burden of proof to justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned"). Indeed, it "is clear that the burden is on the defendant seeking transfer under Section 1404(a) to establish why there should be a change of forum. . . . Without more, it is not enough that the defendant would prefer another forum, nor is it enough merely to show that the claim arose elsewhere. And, not surprisingly, transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to another. . . ." Wright et al., *supra*, § 3848 (footnotes omitted).

## B. Discussion

### 1. Plaintiff's Choice of Forum

Despite the broad discretion afforded the district court in determining whether to transfer venue, a plaintiff's choice of venue is generally accorded deference. See, e.g., *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

842 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum"); *Florens Container*, 245 F.Supp.2d at 1092 ("[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere," citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.1985)); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F.Supp.2d 1077, 1082 (C.D.Cal.2002) ("There is a strong presumption in favor of the plaintiff's choice of forum," citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir.2000)); *E. & J. Gallo Winery*, 899 F.Supp. at 466 (as a general principle, "plaintiff's choice of forum should rarely be disturbed").

A plaintiff's choice of forum is entitled to less deference, however, when the plaintiff elects to pursue a case outside its home forum. See, e.g., *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D.Va.1999) ("[P]laintiff's choice of its home forum is given more weight than its choice of a foreign forum"); see also *Bailey v. Union Pac. R.R. Co.*, 364 F.Supp.2d 1227, 1230 (D.Colo.2005) (a plaintiff's choice of forum is entitled to little weight where "[i]t is neither his home nor the place of the accident"). Neither plaintiff is a citizen of this forum. Consequently, although this factor weighs against transfer to the Eastern District of Wisconsin, the court accords it little weight.

### 2. The Convenience of the Parties

Defendants argue that they will be inconvenienced by litigating in California because YSO has only two employees; they contend that the company's business will be disrupted if the two employees are required to travel to California.[50] The liti-

---

50. Mot. at 14.

gation will not necessarily require the Reoches' presence in California prior to trial, however, and it is of course uncertain whether the case will progress that far. Moreover, YSO is currently involved in other litigation in this district; this fact undermines defendants' argument that they will be greatly inconvenienced.[51] The court nonetheless accepts that defendants will suffer some inconvenience litigating in this district. As plaintiffs have chosen to litigate far from their home forums, any inconvenience they would suffer if compelled to litigate in Wisconsin would likely be less than the inconvenience defendants would experience litigating in California, particularly considering the relative size of the parties' businesses. The court therefore concludes that this factor slightly favors transfer. See *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y. 1991) ("[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer"); see also *Tensor Group, Inc. v. All Press Parts & Equipment, Inc.*, 966 F.Supp. 727, 728–29 (N.D.Ill.1997) (concluding that the convenience of the parties weighed in favor of transferring a copyright infringement action from the Northern District of Illinois to the Eastern District of Wisconsin, because the plaintiff copyright holder was a large corporation that would not be burdened by litigating in Wisconsin, while the alleged infringer was a "one-man operation" that would face a great burden if forced to litigate in Illinois).

### 3. The Convenience of Witnesses

The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate. See, e.g., *Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses"); *A.J. Industries v. U.S. District Court*, 503 F.2d 384, 386–87 (9th Cir.1974) (discussing the importance and history of the convenience of witnesses in evaluating a § 1404 transfer); *Decter v. MOG Sales, LLC*, No. CV 06–1738 MCE GGH, 2006 WL 3703368, *2 (E.D.Cal. Dec. 14, 2006) ("The convenience of the witnesses is said to be the most important factor in considering a transfer motion," citing *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D.Cal.1981)); *Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.*, No. C 06–2469 CW, 2006 WL 2868971, *4 (N.D.Cal. Oct. 6, 2006) (same).

The court accords less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated. See, e.g., *Applied Elastomerics, Inc.*, 2006 WL 2868971 at *4 (citing *STX, Inc.*, 708 F.Supp. at 1556 (discounting the inconvenience to witnesses who were employees of one of the parties because they could be compelled to testify)); *Hartfield v. Offshore Oil Services, Inc.*, No. CV G–06–275, 2006 WL 2670984, *6 (S.D.Tex. Sept. 14, 2006) ("The Court reiterates that the convenience of key witnesses who are employees of the defendant requesting transfer is 'entitled to less weight because that party will be able to compel their testimony at trial,'" quoting *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D.Tex.1992)); *Worldwide Finan-*

---

**51.** Yousuf Decl., ¶ 6. See *Spin Master Ltd. v. Your Store Online*, No. CV 09–2121 CAS (JCx), 2009 WL 927277, filed March 26, 2009.

*cial LLP v. Kopko,* No. CV 03–0428 DFH, 2004 WL 771219, *3 (S.D.Ind. Mar. 18, 2004) ("The courts ordinarily assume that the parties will be sufficiently motivated to have their own partners or employees or other allies appear for trial wherever it might take place. Parties may use Rule 45 of the Federal Rules of Civil Procedure to conduct discovery all over the United States, so the principal concern along these lines is to make non-party witnesses available for trial. The aim is to minimize the risk of 'trial by deposition'" (citations omitted)).

Defendants do not specifically identify any witnesses whom they expect will testify at trial other than the Reoches. Plaintiffs identify four witnesses located in California, all of whom are plaintiffs' employees.[52] Because none of the parties has identified non-party witnesses, this factor adds little to the court's analysis. Certainly, defendants have not demonstrated that the factor favors transfer. See *Bohara,* 390 F.Supp.2d at 963 ("If the [requested] transfer is for the convenience of witnesses, [the] defendant must name the witnesses it wishes to call, the anticipated area of their testimony and its relevance, and the reasons why the present forum would present hardship to them"); see also *Fireman's Fund Ins. Co. v. National Bank for Cooperatives,* No. C 92–2667 BAC, 1993 WL 341274, *4 (N.D.Cal. Aug. 27, 1993) ("The movant is obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included").

### 4. The Location of the Evidence

■ "If [a] motion [to transfer venue] is based on the location of records and documents, the [defendant] must show with particularity the location, difficulty of transportation, and the importance of such record." *Bohara,* 390 F.Supp.2d at 963. Defendants argue that their computers, sales records and customer lists are located in Wisconsin.[53] They proffer no evidence, however, regarding the size or nature of the records. At best, therefore, the factor is neutral. See *id.;* see also *In re Triton Limited Sec. Litig.,* 70 F.Supp.2d 678, 690 (E.D.Tex.1999) ("Defendants ... fail to show that these documents are so voluminous that they would be difficult to transport. Therefore, the Court does not consider this as an important factor in the transfer analysis"); *Bianco v. Texas Instruments, Inc.,* 627 F.Supp. 154, 165 (N.D.Ill.1985) ("As for defendants' argument concerning the location of relevant documents, we do not believe that this is a compelling factor, given the ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country"); *Met–L–Wood Corp. v. SWS Indus., Inc.,* 594 F.Supp. 706, 710 (N.D.Ill. 1984) (observing that the location of documents is not an important factor "unless documents are so voluminous that their transport is a major undertaking"); cf. *Arrow Elec., Inc. v. Ducommun, Inc.,* 724 F.Supp. 264, 266 (S.D.N.Y.1989) (denying transfer to a district where defendant's documents were located because doing so would merely shift the transportation burden from defendant to plaintiff).

### 5. Which Forum's Law Applies

■ Neither party addresses this factor. As plaintiffs' claims are primarily federal trademark and copyright claims, however, the factor carries little weight. Courts in this district and the Eastern District of Wisconsin are equally capable of applying federal law.[54]

---

**52.** Opp. at 20.

**53.** Mot. at 12.

**54.** Plaintiffs assert state law claims, but they are largely duplicative of the federal claims. As respects the state law claims, this court is

### 6. The Interests of Justice

 "The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989). Neither party has identified any ongoing, related litigation in any other forum. As a result, this factor is also neutral.[55]

### 7. Administrative Considerations

 Administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a § 1404(a) transfer. See *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335 (9th Cir.1984) (forum non conveniens case), cert. denied, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Neither party has presented evidence regarding the relative congestion of court dockets here and in the Eastern District Wisconsin. Accordingly, although the docket in the Eastern District of Wisconsin is likely less congested than this district's docket, the court will not take this factor into account in deciding the motion.

### 8. Balancing the Discretionary Factors

Balancing the relevant factors, the convenience of the parties weights slightly in favor of transfer. The remaining factors

are neutral or weigh slightly against transfer. Although the relative size of the parties favors transfer, this factor alone is not sufficient to warrant granting defendants' § 1404(a) motion. See *Iyalla v. TRT Holdings, Inc.,* No. 04 Civ.8114(NRB), 2005 WL 1765707, *6 (S.D.N.Y. July 25, 2005) ("[W]hile the relative means of the parties is a factor in considering a motion to transfer, it has 'rarely been a dispositive reason to grant or deny a transfer motion,'" quoting *Thomas America Corp. v. Fitzgerald,* No. 94 Civ. 0262, 1994 WL 440935, *5 (S.D.N.Y. Aug. 11, 1994)); see also *Partney Const., Inc. v. Ducks Unlimited, Inc.,* No. 08–574–SU, 2008 WL 4838849, *3–5 (D.Or. Nov. 3, 2008) (stating that "Partney's claim of financial hardship is not a factor that must be weighted more heavily than other considerations," and granting defendant's motion to transfer despite plaintiff's limited resources relative to defendant, where other factors favored transfer). Accordingly, defendants' motion for transfer is denied.

### IV. CONCLUSION

For the reasons stated, defendants' motion to dismiss, or, in the alternative, to transfer venue to the Eastern District of Wisconsin is denied.

---

arguably more familiar than a Wisconsin court with California's choice-of-law rules, which will determine whether the claims should be adjudicated under California or Wisconsin law. See *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.,* 472 F.Supp.2d 1183, 1191 (S.D.Cal.2007) ("[T]he only law that definitely applies here is California's choice-of-law rules. Those rules apply if the Court keeps the case here. And, these rules would still apply if the Court transferred the case to [the Eastern District of Pennsylvania]. This Court is more familiar with California's choice-of-law rules than [the Pennsylvania

court]. Therefore, this factor weighs against transfer" (footnote and citations omitted)). On balance, however, the presence of plaintiffs' state law claims adds little to the analysis.

**55.** Plaintiffs identify other cases in this district in which defendants are parties. (Yousuf Decl., ¶¶ 5–6). One case, *Bragel International Inc. v. TV Market Place, LLC,* No. CV 06–4931 JFW (JCx) is closed. The other, *Spin Master Ltd. v. Your Store Online,* No. CV 09–2121 CAS (JCx), is currently pending, but does not involve the products at issue in this case.