**DIRECTV, INC., a California corporation, Plaintiff,**

v.

**EQ STUFF, INC.; et al., Defendants.**

**No. CV0200292DDPVBKX.**

United States District Court, C.D. California, Western Division.

May 8, 2002.

Michelle M. Inouye, Kirkland & Ellis, Los Angeles, CA, Christian S. Genetski, Marc J. Zwillinger, Gregory F. Corbett, Kirkland & Ellis, Washington, DC, for plaintiff.

Sarah J. Barney, Sonja Mila Panajotovic, Brobeck Phleger & Harrison, Los Angeles, CA, Stephen S. Korniczky, Anatoly Weiser, Brobeck Phleger & Harrison, San Diego, CA, for EQ Stuff, Inc., Michael Sean Worley, Betina Worley, defendants.

Michael Sean Worley, St. Augustine, FL, pro se.

Betina Worley, St. Augustine, FL, pro se.

Jacob M. Slania, R. Bruce Wayne, Post Kirby Noonan & Sweat, San Diego, CA, for Taylor Patterson, GBR Enterprises, Inc., defendants.

J. Christopher Jaczko, Allison Hughes Goddard, Cooley Godward, San Diego, CA, Ernest Elijah Price, Leslie Diane Heath, Ropers Majeski Kohn & Bentley, Los Angeles, CA, for Ontech, Inc., defendant.

Neil M. Sunkin, Arter & Hadden, Ernst & Young PLZ, Los Angeles, CA, for Compass Bank, intervenor.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

PREGERSON, District Judge.

This matter comes before the Court on the defendants' motion to dismiss. After reviewing and considering the materials submitted by the parties, the Court denies the motion.

## BACKGROUND

On January 11, 2002, the plaintiff, DIRECTV, Inc., ("DIRECTV" or the "plaintiff") filed the instant action against EQ Stuff, Inc. ("EQ Stuff"), Michael and Betina Worley (the "Worleys"), Anna Bouzas, Taylor Patterson ("Taylor Patterson"), GBR Enterprises, Inc. ("GBR"), and OnTech, Inc. ("OnTech"). The plaintiff alleges against all the defendants violations of The Digital Millennium Copyright Act, 17 U.S.C. §§ 1203 (the "DMCA"); The Communications Act, 47 U.S.C. § 605(e)(3)(a) (the "Communications Act"); and The Wiretap Act, 18 U.S.C. § 2520(a) (the "Wiretap Act"). On the same day, the plaintiff filed an *ex parte* application for a temporary restraining order (TRO), based on violations of the DMCA and the Communications Act. On January 16, 2002 the Court granted the TRO. On March 12, 2002, the Court granted the preliminary injunction.

Before the Court is a motion to dismiss and/or to transfer venue filed by EQ Stuff and the Worleys. The Worleys base their motion to dismiss on lack of personal jurisdiction.[1] The Worleys and EQ Stuff move to dismiss Count IV of the plaintiff's First Amended Complaint ("FAC") for failure to state a claim. The defendants OnTech, GBR, and Taylor Patterson join in the portion of the motion to dismiss Count IV of the FAC. In the alternative, EQ Stuff and the Worleys seek to have the case transferred to Florida.[2]

## DISCUSSION

I. *Motion to Dismiss for Lack of Personal Jurisdiction*

A. *Legal Standard*

 The plaintiff bears the burden of establishing personal jurisdiction. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). If the court, however, has not heard testimony or made factual determinations, the plaintiff must only make a prima facie showing of personal jurisdiction. *Id.* The plaintiff may use affidavits of knowledgeable witnesses in meeting its burden of proving jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588–89 (9th Cir.1996).

The Court's exercise of personal jurisdiction over a non-resident defendant must be consistent with the Constitution. *Kransco Mfg., Inc. v. Markwitz,* 656 F.2d 1376, 1377 (9th Cir.1981). Courts have adopted a two-tiered approach to analyze whether a non-resident defendant's contacts with the forum state are sufficiently substantial so as to comport both with the Constitution and with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This two-tiered approach involves a determination of whether a court has general or specific jurisdiction over a defendant.

---

1. The parties do not dispute that this Court has jurisdiction over EQ Stuff.

2. The defendant Anna Bouzas has not joined in the instant motion.

B. *Analysis*

1. *Specific Personal Jurisdiction*

■■■ Specific personal jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. *Data Disc*, 557 F.2d at 1287. In order for the forum state to properly assert jurisdiction over an out of state defendant, the defendant must have purposefully directed its activities towards residents of the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Further, the forum-related activities must be related to the claim, and the exercise of jurisdiction must be reasonable. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995).

a. *Purposefully Directed Activities*

Although EQ Stuff is subject to jurisdiction in California, the Worleys argue, as individuals, they are not subject to such jurisdiction. The plaintiff, however, contends that the Worleys personally engaged in and directed intentional contacts with customers and business partners in California, activity which the plaintiff argues gives rise to personal jurisdiction. (Pl's Opp. at 1.)

Regarding the Worley's personal involvement with California customers, the plaintiff submits the following evidence: (1) Mrs. Worley was individually in charge of shipping products; and (2) over 2,500 products were sold and shipped to California residents. (*Id.* at 5.)

Regarding the Worley's personal involvement with business partners in California, the plaintiff submits the following evidence: (1) Mr. Worley individually commissioned the production of devices from

California suppliers, including co-defendant OnTech, and High Speed Designs, Inc.; (2) a preliminary accounting shows that the defendants spent over $1 million on costs of goods sold; (3) the defendants contracted with several California companies that provided ongoing services necessary for the operation of their website— namely Card Services International and PayPal; and (4) the defendants had a business services contract with California co-defendant GBR, where the personal contact was Taylor Patterson, a relative of Mr. Worley. (Pl's Opp. at 6–7.)

Moreover, the plaintiffs contend that in each of these business relationships with California entities, Mr. and/or Mrs. Worley were the "guiding force" and the personal contacts with the entities. (*Id.* at 7.) For example, the Pay Pal accounts to which payment for EQ Stuff products were sent were registered in both Michael and Betina Worley's names, and payments sent to these accounts were deposited directly into the Worley's personal bank account.

Based upon the evidence submitted, the Court finds that the Worleys have purposefully directed activities at California by filling orders that the Worleys knew were bound for California, and by conducting business relationships with several California companies that provided ongoing services necessary for the operation of the EQ Stuff website. As such, the Court finds that the defendants have purposefully directed activities at the forum state of California.

b. *Forum–Related Activities*

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that gave rise to the current suit.[3] *Ban-*

---

**3.** The Worleys do not address this prong because they contend that the plaintiff cannot satisfy the purposeful availment test.

*croft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir.2000). This element is established if the plaintiff would not have been injured "but for" the defendant's activities. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998); *Ballard*, 65 F.3d at 1500.

Here, the plaintiff's case is premised on the sale, via the Internet, of allegedly illegal goods into California that allow people to pirate DIRECTV's signals. (Pl's Opp. at 7.) Moreover, the plaintiff would not have suffered injury in the forum but for the Worley's conduct. Clearly, the Worley's contacts are closely related to the plaintiff's causes of action.

### c. *Reasonableness*

██ The final requirement for specific jurisdiction is reasonableness.[4] An otherwise valid exercise of personal jurisdiction is presumed to be reasonable. *Ballard*, 65 F.3d at 1500. Thus, once a court finds purposeful availment, it is the defendant's burden to "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (citing *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174). This determination requires the balancing of seven factors: (1) the extent of purposeful interjection; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Gray & Co.*, 913 F.2d at 761. The Court address the factors most significant to the decision in the instant case.

### i. *Purposeful interjection*

"Even if there is sufficient interjection into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core-Vent*, 11 F.3d at 1488 (internal citation omitted). Here, the Worleys sold and shipped goods into California over 2500 times and established significant business relations with multiple California entities. Accordingly, the Court finds that the purposeful interjection factor weighs in favor of the Court's exercise of personal jurisdiction.

### ii. *The Worley's burden of defending in California*

The Worleys contend that it would be extremely burdensome to litigate this matter in California. Mr. and Mrs. Worley reside in Florida. Moreover, since the filing of the instant motion, the Worleys have decided for financial reasons to represent themselves *pro persona*.[5] (Defs' Reply at 1.)

Although it may be difficult for the Worleys to defend in California, such a requirement is not unreasonable. The Worley's company EQ Stuff is subject to jurisdiction in California, thus the Worleys will likely be in California for the defense of EQ Stuff. Whether the litigation takes place in California or Florida has no bearing on the Worley's decision to represent themselves *pro persona*—that decision had to be made regardless of the forum state. Accordingly, the Court finds that the Worley's burden of defending in California is not unreasonable.

---

**4.** The Worleys do not address the reasonableness prong because they contend that the plaintiff cannot satisfy the purposeful availment test. (Defs' Mtn. at 7.)

**5.** The Court notes that EQ Stuff is represented by counsel in California.

### iii. California's interest in resolving this dispute

Because the plaintiff maintains its headquarters and principal place of business in California, California has a strong interest in providing an effective means of redress for its residents tortiously injured. *Panavision,* 141 F.3d at 1323. Thus, the Court finds that this factor weighs in DirecTV's favor.

### iv. Most efficient forum for resolution of dispute

The most efficient resolution will be achieved by a court that is already "familiar with the facts and procedural history of the litigation." *Ballard,* 65 F.3d at 1502. This Court has already invested time and resources with this case, having issued both a Temporary Restraining Order and a Preliminary Injunction after extensive briefing on the merits. This Court also has five related cases pending before it. The Court, therefore, finds that the most efficient forum for resolution of the dispute is this forum.

### v. Conclusion

The Court concludes that the Worleys failed to present a compelling case that this Court's exercise of jurisdiction in California would be unreasonable.

### d. Conclusion

Based on the foregoing analysis, the Court finds that the Worleys are subject to personal jurisdiction in this Court.[6]

---

**6.** Because the Court finds that the Worleys are subject to personal jurisdiction in this Court under the doctrine of specific jurisdiction, the Court does not address the issue of general jurisdiction.

## II. Motion to Transfer Venue

### A. Legal Standard

Title 28 U.S.C. § 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1401(a).

### B. Analysis[7]

■ Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising,* 211 F.3d 495, 498 (9th Cir.2000) (internal citation omitted). A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. *Id.* For example, the court may consider: (1) the plaintiff's choice of forum, (2) the convenience of the witnesses and parties, (3) the familiarity of the forum with the applicable law, (4) the ease of access to evidence, (5) the parties' contacts with the chosen forum, and (6) the differences in the costs of litigation. *See id.* at 498–99; *see also Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

### 1. Plaintiff's choice of forum

■ There is a strong presumption in favor of the plaintiff's choice of forum. *Ravelo Monegro v. Rosa,* 211 F.3d 509, 513 (9th Cir.2000). Here, much of the operative events—the pirating of DIRECTV's signals—occurred in California. Moreover, the plaintiff's corporate headquarters

---

**7.** As a preliminary matter, the Court notes that EQ Stuff and the Worleys bring the motion to transfer venue. Taylor Patterson, GBR and OnTech do not join in the motion to transfer venue.

are located within this district, in El Segundo, California. *See, e.g., Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335 (9th Cir.1984) (holding that a showing of inconvenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience a defendant may show). The Court finds that this factor weighs against transferring the instant case to Florida.

### 2. Convenience of the witnesses and parties

Many of the parties and witnesses reside in California. For example, DIRECTV, Taylor Patterson, GBR, OnTech, Paypal, and Cardservice International are all located in California. Although Florida may be more convenient for the Worleys and EQ Stuff, that is not the case for the other parties and witnesses. At best, the defendants' motion to transfer venue would serve to "merely shift rather than eliminate the inconvenience." *Decker Coal Co.,* 805 F.2d at 843. The Court finds that this factor weighs against transferring the instant case to Florida.

### 3. Familiarity of the forum with the applicable law

The familiarity of the Court with the relevant issues of a case is one of the "practical problems that make trial of a case easy, expeditious and inexpensive." *Id.; see also Jones,* 211 F.3d at 498 (recognizing that courts should consider the forum "that is most familiar with the governing law"). This Court has already invested time and resources with this case, having issued both a Temporary Restraining Order and a Preliminary Injunction after extensive briefing on the merits. In addition, this Court is already handling five cases related to the instant case. The Court finds that this factor weighs against transferring the instant case to Florida.

### 4. Ease of access to evidence

The plaintiff's current discovery efforts are focused not on Florida, but rather on obtaining information and documents from Taylor Patterson, GBR, OnTech, and other designers and developers, all of whom are California residents. On the other hand, EQ Stuff's records and inventory are in Florida. Most of the evidence is in the form of documents and small pieces of hardware. Thus, if necessary, any evidence in Florida can easily be transported to California. The Court finds that this factor weighs against transferring the instant case to Florida.

### 5. Parties' contacts with the chosen forum

The plaintiff and two of the defendants have business operations in California. The plaintiff's corporate headquarters are located in El Segundo, California, and the vast majority of DIRECTV employees are located in the Los Angeles area. Moreover, the Worleys and EQ Stuff marketed, sold, and shipped illegal pirate devices into the State of California and the Central District. The Court finds that this factor weighs against transferring the instant case to Florida.

### 6. Differences in the costs of litigation

The Worleys and EQ Stuff contend that the financial burden of litigating in California requires that this Court transfer the instant case to Florida. The Worleys further argue that the plaintiff has the ability to bear the expense of a transfer of venue, while the Worley's ability to litigate would be prejudiced if venue is not transferred. (Defs' Mtn. at 10.) However, viewing this case as a whole, the plaintiff and three of the defendants are from California. This is not a case, as the Worleys suggest, of a large corporation suing an individual in an unreasonable forum. (*Id.*) Here, half of the parties are located in California. Transferring the case to Florida would

merely shift the costs of litigation from EQ Stuff and the Worleys to the California defendants. The Court finds that this factor weighs against transferring the instant case to Florida.

### 7. Conclusion

The Court finds that on balance the factors weigh against transferring the instant case to Florida.

### III. Motion to Dismiss The WireTap Act Claim

#### A. Legal Standard

Under 18 U.S.C. § 2512, only a criminal action may be brought. The plaintiff claims a private right of action for the violation of § 2512 by virtue of 18 U.S.C. § 2520. Section 2520 provides, in relevant part, that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation." 18 U.S.C. § 2520.

#### B. Analysis

 The issue of whether § 2520 applies to § 2512 was discussed in *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F.Supp. 1019 (D.Neb.1991). In that case, the plaintiff, Oceanic Cablevision, Inc. ("Oceanic") provided cable television programming to subscribers in the Honolulu, Hawaii area. *Id.* at 1022. Oceanic's customers were able to purchase differing levels of service. *Id.* Oceanic controlled the customer's access to the different levels of service by the use of a converter box, which unscrambled the signal sent out by Oceanic. *Id.* The defendant, M.D. Electronics ("M.D.Electronics"), sold equipment that allowed Oceanic's signals to be unscrambled without payment to Oceanic. *Id.*

On the defendant's motion to dismiss for failure to state a claim, the *Oceanic* court held that § 2520 "confers a private cause of action upon persons when the action is brought against parties that have violated the provision of § 2510–2521." *Id.* at 1027. The *Oceanic* court found that "[a] plaintiff may bring a civil action under § 2520 whether or not the defendant had been subject to criminal prosecution and conviction, it is the plaintiff's burden to establish that the requirements of this section are met." *Id.* The *Oceanic* court further established that "the sale of 'cloned' satellite television descramblers are prohibited by § 2512." *Id.* at 1028 (citing *United States v. McNutt*, 908 F.2d 561 (10th Cir.1990)).

This Court finds the rationale of *Oceanic* persuasive.[8] Under the rationale of *Oceanic*, the Court cannot conclude that the plaintiff has failed to state a cause of action under § 2520 for an alleged violation of § 2512. Accordingly, the Court denies the defendants' motion to dismiss the plaintiff's fourth cause of action.

### CONCLUSION

Based on the foregoing analysis, the Court denies the defendants' motion to dismiss.

IT IS SO ORDERED.

---

**8.** The defendants rely on *Flowers v. Tandy Corp.*, 773 F.2d 585 (4th Cir.1985)and *Ages Group, L.P. v. Raytheon Aircraft Co.*, 22 F.Supp.2d. 1310 (M.D.Ala.1998). The Court, however, is not persuaded by theses cases. *See, e.g., Flowers*, 773 F.2d 585 (appeal of a directed verdict, in which the 4th Circuit found that § 2520 did not allow a private cause of action for § 2512 violations); *Ages Group, L.P.*, 22 F.Supp.2d 1310 (summary judgment motion, in which the court followed the holding in *Flowers*). Instead the Court finds the procedural posture and the facts of *Oceanic* analogous to the instant case.